## STATE OF CONNECTICUT *v.* DANIEL DIAZ
## (SC 17245)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued November 30, 2004—officially released August 9, 2005

*Neal Cone,* senior assistant public defender, for the appellant (defendant).

*Denise B. Smoker*, assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Mary Rose Palmese*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

PALMER, J. A jury found the defendant, Daniel Diaz, guilty of two counts of possession of narcotics with intent to sell in violation of General Statutes § 21a-278 (b), two counts of possession of narcotics in violation of General Statutes § 21a-279 (a), and one count of criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1). The trial court rendered judgment in accordance with the jury verdict and imposed a total effective sentence of forty-three years imprisonment. On appeal,[1] the defendant claims that the trial court failed to canvass him adequately in accordance with Practice Book § 44-3[2] before permitting him to proceed to trial without counsel, in violation of his constitutionally protected right to counsel. In support of his claim that his waiver of counsel was constitutionally infirm, the defendant contends, inter alia, that the court failed to apprise him of the range of possible penalties

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] Practice Book § 44-3 provides: "A defendant shall be permitted to waive the right to counsel and shall be permitted to represent himself or herself at any stage of the proceedings, either prior to or following the appointment of counsel. A waiver will be accepted only after the judicial authority makes a thorough inquiry and is satisfied that the defendant:

"(1) Has been clearly advised of the right to the assistance of counsel, including the right to the assignment of counsel when so entitled;

"(2) Possesses the intelligence and capacity to appreciate the consequences of the decision to represent oneself;

"(3) Comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and

"(4) Has been made aware of the dangers and disadvantages of self-representation."

that he faced upon conviction. We agree with the defendant and, accordingly, reverse the judgment of the trial court.

The jury reasonably could have found the following facts. On March 13, 2001, officers of the New Britain police department arrested Kevin Lockery for a narcotics offense. In exchange for leniency, Lockery agreed to cooperate and thereafter identified the defendant as his drug supplier. At the instigation of the police, Lockery contacted the defendant via a cellular telephone and arranged to purchase five bags of heroin from him in the vicinity of a pay telephone located across the street from the Meadowlands Restaurant in New Britain. Shortly thereafter, surveillance officers observed the defendant enter his vehicle and travel from his apartment to a parking lot near that pay telephone. The defendant pulled into the parking lot but left when Lockery, who had remained at the police station, did not arrive. Shortly thereafter, the police stopped the defendant's vehicle. A patdown search of the defendant revealed twenty-five packets of heroin, a cellular telephone and $1025 in cash. The defendant was arrested and charged with various narcotics offenses.

The following day, the police obtained a search warrant for the defendant's apartment. Upon execution of the warrant, the police seized, inter alia, 167 packets of heroin similar to those that they had seized from the defendant's person the day before, approximately sixteen grams of marijuana, a twelve gauge shotgun and several items commonly used in the packaging of marijuana for sale, including a scale, ziplock bags and elastic bands.

At the defendant's arraignment later that day, attorney Daniel Dilzer of the law firm of Davila and Dilzer appeared on the defendant's behalf for bond purposes only. Although the defendant already was facing lar-

ceny, failure to appear and motor vehicle charges unrelated to his arrest for his possession of narcotics on March 13, 2001, he was released on bond. On April 5, 2001, however, the defendant was arrested again on narcotics charges that also had arisen out of events unrelated to the present case.[3] At his April 6, 2001 arraignment on the narcotic charges relating to the April 5, 2001 arrest, attorney Abraham Kazanjian of the public defender's office appeared on behalf of the defendant for bond purposes only. Kazanjian informed the court, *Wollenberg, J.*, that the defendant had retained attorney Dilzer to represent him in connection with his motor vehicle matters and that the defendant currently was in the process of retaining attorney Jon Schoenhorn to represent him in connection with the other pending criminal matters. When the defendant again appeared in court on April 10, 2001, he was represented by attorney Robert McKay, also of the law firm of Davila and Dilzer. McKay informed the court, *Owens, J.*, that McKay's firm had filed appearances in the defendant's motor vehicle matters only and that the defendant had not yet obtained counsel for the "new cases." The court continued all of the defendant's cases for several weeks so that he could have the opportunity to obtain counsel in each of the pending criminal matters.

The defendant again appeared in court on May 14, 2001, at which time he was accompanied by attorney McKay. At that proceeding, McKay informed the court, *Wollenberg, J.*, that McKay's firm was representing the defendant in the defendant's motor vehicle matters and that the firm had filed appearances in certain of the

---

[3] We note that the defendant subsequently was convicted of some of those offenses, including possession of narcotics with intent to sell by a person who is not drug-dependent, possession of narcotics with intent to sell within 1500 feet of a public housing project, possession of narcotics, and interfering with a police officer. See *State* v. *Diaz*, 86 Conn. App. 244, 246, 860 A.2d 791 (2004). On appeal, the Appellate Court affirmed the defendant's conviction. Id., 259.

defendant's other cases for bond purposes only. Noting that some of the pending cases were "very substantial," the court denied the defendant's motion for a bond reduction and scheduled the defendant's next court appearance for June 4, 2001. The court emphasized that the defendant needed an attorney for the "drug cases."

On June 4, 2001, however, attorney Raul Davila of Davila and Dilzer appeared in court with the defendant and informed the court, *Wollenberg, J.,* that the defendant did not wish to have Davila's firm continue to represent him. The defendant confirmed Davila's statements and also stated that he expected that attorney Schoenhorn would be present at the defendant's next court appearance. Thereafter, however, on July 9, 2001, the defendant appeared without counsel and informed the court, *Wollenberg, J.,* that Schoenhorn would not be representing him. After first indicating that he intended to retain an attorney, the defendant then told the court that he planned to proceed pro se in his pending cases. The court advised the defendant that if he chose to proceed pro se, an attorney would be appointed to serve as standby counsel.[4] The court also advised the defendant that he would be trying the cases against trained prosecutors and that he "could do a couple of years on [the failure to appear and motor vehicle charges] alone." At the conclusion of the hearing, the court placed the defendant's cases on the firm trial list.

At the next court appearance, on September 17, 2001, the defendant's mother informed the court, *Owens, J.,*[5]

---

[4] Practice Book § 44-5 provides: "If requested to do so by the defendant, the standby counsel shall advise the defendant as to legal and procedural matters. If there is no objection by the defendant, such counsel may also call the judicial authority's attention to matters favorable to the defendant. Such counsel shall not interfere with the defendant's presentation of the case and may give advice only upon request."

[5] Hereinafter, all references to the trial court are to the court, *Owens, J.,* unless otherwise indicated.

that she was in the process of retaining attorney William J. Sweeney to represent the defendant. The court removed the defendant's cases from the firm trial list and continued them to October 1, 2001, for a pretrial conference. On that date, however, Sweeney appeared on behalf of the defendant for bond purposes only and indicated that he was representing the defendant in only one of his pending cases. The defendant informed the court that he would be representing himself in the other cases. After noting that the defendant could not be "force[d]" to have an attorney represent him, the court once again placed the defendant's cases on the firm trial list.

The defendant next appeared in court on October 22, 2001, at which time the trial court canvassed him concerning his decision to waive his right to counsel and to proceed pro se.[6] The defendant informed the

---

[6] The court canvassed the defendant in relevant part as follows:

"The Court: Mr. Diaz, let me ask you some questions. You don't have a lawyer, and it's my understanding that you want to proceed on these cases without a lawyer. Is that correct?

"[The Defendant]: Yes. That is correct.

"The Court: For a trial?

"[The Defendant]: That is correct.

"The Court: And you want to have the trial come up as soon as possible. Is that correct?

"[The Defendant]: As soon as possible.

"The Court: All right. Okay. Let me ask you, how far have you gone in school?

"[The Defendant]: I have a high school education.

"The Court: From where?

"[The Defendant]: New Britain High [School].

"The Court: Okay. And I'm not asking these questions to embarrass you. How old are you now?

"[The Defendant]: I am thirty-six.

"The Court: All right. Have you had any—ever had any serious mental health problems?

"[The Defendant]: No, I have not.

"The Court: All right. Okay. You've talked to lawyers before about your cases. Is that correct?

"[The Defendant]: Yes, I have.

"The Court: And you understand what it means—and they've told you what it means to proceed pro se for yourself. Is that correct?

"[The Defendant]: Yes. Yes it is.

court that he was thirty-six years old, that he had gradu-
ated from high school, that he had no history of mental

"The Court: Now these cases—you're charged with a whole group of
cases, sale of a controlled substance, possession of marijuana. I'm not going
to go over all the details. That's one count—or one group of cases that you
were arrested for on [March 13]—another one, [March 13], possession of
narcotics, sale of illegal drugs, drug cases and so forth. And then there's
some motor vehicle cases, and I assume—so that we can cut some of this
to the quick, that it's not contemplated, [assistant state's attorney] Palmese,
that the motor vehicle cases or the larceny [in the sixth degree] case will
be tried with the narcotics cases. Is that correct?

"[Assistant State's Attorney]: That's correct, Your Honor.

"The Court: Okay.

"[Assistant State's Attorney]: If we come to some form of an agreement,
there might be a guilty plea to an operating under suspension, but as far
as a—

"The Court: But the major thrust of the state's cases—

"[Assistant State's Attorney]: Right.

"The Court: And what they will be trying you for initially will be the group
of drug cases. You understand that?

"[The Defendant]: Yes.

"The Court: Okay. All right. Not that they're not concerned about the
motor vehicle [case], but these are the major cases that they consider, and
that's what they want to do. So that some of the issues involving the drug
cases have a certain degree of complexity to them, and I should point out
to you that you would be better off being represented by an attorney instead
of representing yourself. You understand that?

"[The Defendant]: I understand that, Your Honor.

"The Court: You know that you've never gone to law school, so you really
don't have any skill in knowing what the law is. Have you done any work
on your own with respect to any research or anything like that?

"[The Defendant]: Yes I have. I've been to trial in New Britain before.

"The Court: All right. On your own?

"[The Defendant]: No.

"The Court: You had a lawyer. Who'd you have?

"[The Defendant]: Cosgrove. Mr. Cosgrove.

"The Court: Mr. Cosgrove, the public defender. And I'm sure that he was
very detailed and explained everything to you, [did] he or not?

"[The Defendant]: Yes.

"The Court: All right.

"[The Defendant]: And I understand. I have knowledge of the law, Your
Honor.

"The Court: All right. Are you at all familiar—you are familiar with the
legal proceedings, is that correct?

"[The Defendant]: Yes.

"The Court: And you realize that potential harmful consequences proceed-
ing without the advice and assistance of an attorney who is more qualified
than you could result in difficulties to you. You understand what I'm saying?
All right. You do realize that, under our state constitution and our federal

health problems and that he had spoken to several attorneys about his cases. The court then briefly reviewed the charges pending against the defendant, informed him of his right to counsel, explained in some detail the "obvious dangers and disadvantages" of proceeding pro se and advised him that he would be "better off being represented by an attorney instead of representing [himself]." The defendant nevertheless reiter-

constitution, you are entitled to effective assistance of counsel, either retained by you or [obtained] by the court? And if you are unable to afford one—I know that you have had them before, and that this right has been given to you, you're entitled to one. But you're waiving that, is that correct?

"[The Defendant]: Yes I am, Your Honor.

"The Court: Now, the state has the burden of proving each and every element of the crime[s] charged . . . beyond a reasonable doubt, and you can testify yourself if you [want] to. No one could make you testify. You can bring witnesses. You can cross-examine witnesses if you want to and you can put on any evidence that would be relevant to these cases. Do you follow what I'm saying?

"[The Defendant]: Yes.

\* \* \*

"The Court: Okay. Now, if you need witnesses, I should tell you, you should notify the clerk's office, and they will make a—the court will make a determination.

\* \* \*

"The Court: All right. Now, in view of the obvious dangers and disadvantages which I have told you about, is it still your desire and intention to proceed by yourself? Is that right?

"[The Defendant]: Yes it is, Your Honor.

"The Court: All right. Now, the other thing I could do for you if you wanted it—I could appoint a standby counsel who could be there to assist you if you need [him]. Do you want that or do you need that? In other words—

"[The Defendant]: Yes I—

"The Court:—You can run your own defense, but if something comes up you can turn to the counsel at counsel table. . . . Do you follow what I am saying?

"[The Defendant]: I would—I would like that. However, I think that it would be a disadvantage if it was somebody who was appointed . . . from the public defender's office within this building.

\* \* \*

"The Court: . . . Do you have any questions you want to ask me about this?

"[The Defendant]: No.

"The Court: Okay."

ated his desire to proceed without counsel. At that point, the assistant state's attorney made an on-the-record plea offer of fifteen years imprisonment, which the defendant rejected, responding that "plea bargaining will not be a resolution to this case." At the close of the proceeding, the court again addressed the issue of waiver, stating: "You know that I know that there's an offer in this case of fifteen years, but you know, after a jury decides the case, and either convicts you or, obviously, if you're acquitted, you're acquitted. If you're convicted, you know, you run—the judge, or whoever the judge is, has the benefit of—we'll do a presentence report and then we'll do whatever sentence is appropriate. You understand that?" According to the transcript of the proceedings, the defendant did not respond.

On December 17, 2001,[7] the defendant appeared in court to argue his previously filed motion for a bond reduction. At the hearing, the state requested that the court appoint standby counsel for the defendant. The court granted the state's request and, in addition, scheduled jury selection to begin on January 7, 2002. After hearing arguments on the defendant's motion for a bond reduction, the court denied the motion.

During the course of that proceeding, the court asked the defendant why he had not retained counsel. The defendant indicated that he was dissatisfied with the legal services rendered by counsel whom he previously had retained. The court then noted that the defendant might be eligible for the services of the public defender, stating: "[W]hy don't you talk to the public defender, you know, tell the public defender you want to—you know, you're probably entitled with these kinds of

---

[7] On November 19, 2001, attorney Sweeney moved to withdraw from the case in which he had filed an appearance on behalf of the defendant for bond purposes only. The court, *Gaffney, J.*, granted Sweeney's motion and placed that case on the firm trial list along with the others.

charges. These are big prison time cases . . . ." The defendant responded: "Yes, I understand that, Your Honor. It appears to be that way. Also, there are many things within my file, Your Honor, in which—they have been concealed for a very long time, Your Honor. . . . I honestly believe that I can try this case on my own."

On January 7, 2002, the defendant appeared in court with appointed standby counsel, attorney Thomas Mullins. The assistant state's attorney advised the court that the state had filed long form informations[8] and that the defendant had been advised of their contents. The court thereafter clarified for the defendant the role of standby counsel.

On January 14, 2002, before the commencement of jury selection, the assistant state's attorney suggested that the trial court once again canvass the defendant regarding his decision to proceed without counsel. The court, *Wollenberg, J.*, informed the defendant of his constitutional right to counsel and of the limited role of standby counsel. The court also recited in detail the numerous procedures relating to the conduct of a trial, from jury selection to jury charge. Jury selection then commenced, with the defendant proceeding pro se.

The defendant continued to represent himself during the trial, which followed immediately upon the conclusion of jury selection. At the conclusion of the trial, the jury found the defendant guilty on all counts, and the defendant received a total effective sentence of forty-three years imprisonment.

---

[8] The state initially filed two informations, one charging the defendant with certain crimes in connection with the patdown search that the police conducted after they had stopped the defendant's vehicle on March 13, 2001, and the other charging the defendant with certain crimes in connection with the search of the defendant's apartment the following day. The court, *Wollenberg, J.*, thereafter granted the state's motion to consolidate the two informations, and the state subsequently filed one long form substitute information charging the defendant with the crimes of which he subsequently was convicted.

On appeal, the defendant contends that the trial court inadequately canvassed him before accepting his waiver of counsel in violation of his right to counsel guaranteed by the sixth amendment to the United States constitution[9] and article first, § 8, of the constitution of Connecticut.[10] The defendant's primary claim is that his waiver of counsel was not knowing, intelligent and voluntary by virtue of the trial court's failure to inform him of the range of possible penalties that he would face upon conviction.[11] We agree.[12]

"The right to counsel and the right to self-representation present mutually exclusive alternatives. A criminal defendant has a constitutionally protected interest in each, but since the two rights cannot be exercised

---

[9] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."

The sixth amendment right to counsel is made applicable to state prosecutions through the due process clause of the fourteenth amendment. See *Gideon* v. *Wainwright*, 372 U.S. 335, 342, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963).

[10] Article first, § 8, of the constitution of Connecticut provides in relevant part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel . . . ."

[11] The defendant also claims that his canvass was deficient because the court failed to apprise him adequately of the nature of the charges against him and the dangers and disadvantages of proceeding pro se. As our summary of the trial court record indicates, these claims are without merit because the trial court went to considerable lengths to inform the defendant with respect to those two considerations. We need not belabor the defendant's additional claims, however, in view of our determination that the canvass was constitutionally infirm insofar as the trial court inadequately apprised the defendant about the range of possible penalties that he could face upon conviction.

[12] The defendant contends that article first, § 8, of the state constitution provides greater protection than the correlative provisions of the sixth amendment to the federal constitution. In support of his claim, the defendant has undertaken a thorough state constitutional analysis by applying the various factors set forth in *State* v. *Geisler*, 222 Conn. 672, 685, 610 A.2d 1225 (1992). Because we conclude that the defendant's canvass was inadequate under the federal constitution, however, we need not decide whether the state constitution provides broader protection than the federal constitution in the context of this case.

simultaneously, a defendant must choose between them. When the right to have competent counsel ceases as the result of a sufficient waiver, the right of self-representation begins. . . . Put another way, a defendant properly exercises his right to self-representation by knowingly and intelligently waiving his right to representation by counsel." (Internal quotation marks omitted.) *State* v. *Wolff*, 237 Conn. 633, 654, 678 A.2d 1369 (1996). "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must knowingly and intelligently [forgo] those relinquished benefits." (Internal quotation marks omitted.) *State* v. *Frye*, 224 Conn. 253, 256, 617 A.2d 1382 (1992). The state bears the burden of demonstrating that the defendant knowingly and intelligently waived his right to counsel. Id., 260.

"[Practice Book § 44-3, formerly §] 961 was adopted in order to implement the right of a defendant in a criminal case to act as his own attorney . . . . Before a trial court may accept a defendant's waiver of counsel, it must conduct an inquiry in accordance with § [44-3], in order to satisfy itself that the defendant's decision to waive counsel is knowingly and intelligently made. . . . Because the § [44-3] inquiry simultaneously triggers the constitutional right of a defendant to represent himself and enables the waiver of the constitutional right of a defendant to counsel, the provisions of § [44-3] cannot be construed to require anything more than is constitutionally mandated. . . .

"[A] defendant need not . . . have the skill and experience of a lawyer in order competently and intelligently to choose self-representation . . . . Rather, a record that affirmatively shows that [he] was literate, competent, and understanding, and that he was voluntarily exercising his informed free will sufficiently supports

a waiver. . . . The nature of the inquiry that must be conducted to substantiate an effective waiver has been explicitly articulated in decisions by various federal courts of appeals. See, e.g., *United States* v. *Cash*, 47 F.3d 1083, 1088 (11th Cir. 1995) (court must inform defendant of charges, included offenses and possible range of punishment); *United States* v. *Hurtado*, 47 F.3d 577, 583 [2d Cir.] (factors determining valid waiver include whether defendant understood that he had choice between proceeding pro se and with assigned counsel, understood advantages of having trained counsel, and had capacity to make intelligent choice) [cert. denied, 516 U.S. 903, 116 S. Ct. 266, 133 L. Ed. 2d 188 (1995)]; *United States* v. *Van Krieken*, 39 F.3d 227, 229 (9th Cir. 1994) (defendant must be aware of nature of charges against him, possible penalties and disadvantages of self-representation); *Government of Virgin Islands* v. *James*, 934 F.2d 468, 471 (3d Cir. 1991) (waiver must be made with apprehension of nature of charges, statutory offenses included within them, range of allowable punishments thereunder, possible defenses to charges, circumstances in mitigation thereof, and all other facts essential to broad understanding of whole matter); *United States* v. *Silkwood*, 893 F.2d 245, 249 (10th Cir. 1989) (same) [cert. denied, 496 U.S. 908, 110 S. Ct. 2593, 110 L. Ed. 2d 274 (1990)]; *United States* v. *McDowell*, 814 F.2d 245, 251 [6th Cir.] (model inquiry includes questioning about defendant's legal background, knowledge of crimes charged, possible punishments, familiarity with Federal Rules of Evidence and Criminal Procedure, procedure for testifying, and advice that defendant would be better served by representation by trained attorney) [cert. denied, 484 U.S. 980, 108 S. Ct. 478, 98 L. Ed. 2d 781 (1987)]." (Citations omitted; internal quotation marks omitted.) *State* v. *Wolff*, supra, 237 Conn. 654–55.

"The defendant, however, does not possess a constitutional right to a specifically formulated canvass [with respect to this inquiry]. His constitutional right is not violated as long as the court's canvass, whatever its form, is sufficient to establish that the defendant's waiver was voluntary and knowing. . . . In other words, the court may accept a waiver of the right to counsel without specifically questioning a defendant on each of the factors listed in Practice Book § [44-3] if the record is sufficient to establish that the waiver is voluntary and knowing." (Citation omitted.) *State* v. *Webb*, 238 Conn. 389, 429, 680 A.2d 147 (1996).

We conclude that the trial court's canvass in the present case failed to meet that constitutional standard with respect to the duty to ensure that an accused who seeks to proceed pro se is advised of the range of permissible punishments available to the sentencing judge upon the accused's conviction. There is nothing in the record to indicate that the defendant ever was advised, by the court—or anyone else—of the maximum period of imprisonment that could be imposed, i.e., a period of nearly fifty years. Moreover, the court never asked the defendant whether he otherwise was aware of the maximum sentence that the court could impose if he chose to have his case tried instead of accepting the plea bargain tendered by the state.

It undoubtedly is true, as the state asserts, that the defendant was aware "that he faced a substantial amount of prison time if convicted." Indeed, the fifteen year sentence that the assistant state's attorney agreed to recommend if the defendant agreed to forgo a trial and plead guilty is itself a substantial sentence. The state also is correct that the court was not constitutionally required to ensure that the defendant had a " 'precise understanding' " of the range of possible punish-

ments.[13] We disagree with the state, however, that the record is sufficient to establish that the defendant had a meaningful appreciation of the true magnitude of the sentence that he faced upon conviction. In fact, the term of imprisonment to which the defendant had been sentenced was nearly three times the sentence that the state was willing to recommend in return for the defendant's guilty plea. Although the court did refer to the charges pending against the defendant as "very substantial" and to the defendant's cases as "big prison time cases," those comments provided no real guidance to the defendant with respect to the actual prison time to which he was exposed. Such terms may have some utility in aiding the court to convey the serious consequences faced by a defendant who expresses a desire to proceed pro se, but, standing alone, they are far too nebulous and imprecise to satisfy the constitutional requirement that a defendant be advised of the range of permissible punishments.[14]

*United States* v. *Erskine*, 355 F.3d 1161 (9th Cir. 2004), which involves a fact pattern analogous to the present case, supports our conclusion regarding the invalidity of the defendant's waiver of counsel. In *Erskine*, the defendant, Erik D. Erskine, waived his right to counsel after the District Court had indicated that the maximum possible sentence that Erskine would

---

[13] Of course, the more precise the court is in explaining the range of permissible penalties, the more likely that the court's canvass will pass constitutional muster. We therefore urge our courts to be precise when advising a defendant of the sentencing range available to the court if the defendant chooses to proceed to trial and subsequently is convicted.

[14] We note that the record does not support a presumption that the defendant had been apprised by counsel of the range of possible penalties that he faced if convicted. Nor does the state claim that such a presumption exists. To the extent that the existence of certain facts might give rise to such a presumption in another case, there are no such facts in the present case because the defendant was represented by counsel only briefly and never, insofar as the record reflects, in connection with the narcotics charges except for bond purposes only.

face upon conviction was a term of imprisonment of one year. Id., 1164–65. In fact, the maximum possible sentence was a term of imprisonment of five years. Id., 1165. Erskine thereafter represented himself at trial. See id. A jury ultimately found him guilty on one of the two counts of the indictment. Id. The District Court subsequently sentenced Erskine to a period of incarceration of twenty-seven months; id., 1166 n.7; "more than twice the length that it had allowed [Erskine] to believe was the maximum [when he waived his right to counsel]." Id., 1166. On appeal, Erskine claimed that his waiver of counsel was not knowing and voluntary because the District Court had failed to advise him correctly about the range of possible punishments that could be imposed upon conviction. Id., 1162. The Court of Appeals for the Ninth Circuit agreed, concluding that, although Erskine "was adequately warned of the disadvantages of self-representation, his . . . waiver [of counsel was] valid only if the court also ascertained that he understood the possible penalties he faced." Id., 1169. The Court of Appeals concluded that Erskine's waiver of counsel was not intelligent and voluntary because "the record [did] not reveal that Erskine understood the possible penalty he faced at the time of his . . . waiver [of counsel]." Id., 1171.

Although the trial court in the present case never *misstated* the range of possible penalties that the defendant would face upon conviction, the court never gave the defendant any meaningful range at all. Thus, in the present case, as in *Erskine*, the defendant simply could not adequately appreciate the length of prison time that he would face upon conviction. In such circumstances, it cannot be said that the defendant "received a realistic picture from [the court] regarding the magnitude of his decision [to proceed to trial without counsel]." *United States* v. *Fore*, 169 F.3d 104, 108 (2d Cir.), cert. denied, 527 U.S. 1028, 119 S. Ct. 2380, 144 L. Ed. 2d 783 (1999).

In other words, the record does not establish that the defendant "knew what he [was] doing and [that] his choice [was] made with eyes open," as the constitution requires. (Internal quotation marks omitted.) *State* v. *Day*, 233 Conn. 813, 828, 661 A.2d 539 (1995), quoting *Faretta* v. *California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). Consequently, the defendant is entitled to a new trial.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other justices concurred.