******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ALTON WOODS
(AC 36737)

DiPentima, C. J., and Gruendel and Sheldon, Js.

*Argued March 16—officially released June 30, 2015*

(Appeal from Superior Court, judicial district of Litchfield, Hon. Charles D. Gill, judge trial referee)

*Cameron R. Dorman*, assigned counsel, for the appellant (defendant).

*Jonathan M. Sousa*, special deputy assistant state's attorney, with whom, on the brief, were *David S. Shepack*, state's attorney, and *David R. Shannon*, senior assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, Alton Woods, appeals from the judgment of the trial court finding him in violation of probation pursuant to General Statutes § 53a-32. On appeal, the defendant claims he was deprived of his right to counsel because the trial court failed to establish that his waiver of that right was made knowingly and intelligently. Specifically, the defendant argues that the court improperly accepted his waiver of counsel without first establishing, either through the record or by way of a proper canvass, that he understood the range of permissible punishments to which he could be exposed if he was found to be in violation of probation. We agree, and accordingly, reverse the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. On April 25, 2012, the defendant was found guilty of one count of possession of narcotics in violation of General Statutes § 21a-279 (a) and one count of failure to appear in the first degree in violation of General Statutes § 53a-172. He was sentenced to a total effective term of ten years of incarceration, suspended after one year, and three years of probation. On June 26, 2013, the defendant was released from prison and placed on probation. On July 1, 2013, the defendant signed a "[c]onditions of [p]robation" form, which explained the terms of his probation. Among the standard conditions of probation was the requirement that the defendant "[r]eport as the Probation Officer [directs] . . . [and] [k]eep the Probation Officer informed of where you are, tell your probation officer immediately about any change to your legal name, address, telephone number, cell phone number . . . and allow the Officer to visit you as he or she requires." In addition, a special condition was imposed, requiring the defendant to submit to "[s]ubstance [a]buse [e]valuation[s] and [t]reatment as deemed necessary by [the] Office of Adult Probation."

On August 8, 2013, an arrest warrant was issued for the defendant after he allegedly failed to report to the Office of Adult Probation on three separate occasions. The defendant's probation officer alleged in the application for the arrest warrant that he had visited the defendant's reported residence and had spoken with the defendant's mother, who stated that the defendant did not reside at that address. The defendant subsequently was arrested and a violation of probation hearing was scheduled.

On August 22, 2013, Attorney John Cizik, from the Public Defender's Office, was appointed as counsel for the defendant. At the probation hearing, Cizik noted that he had "advised" the defendant and then entered a denial on his behalf. The trial court also granted the defendant's request to continue the case to September

20, 2013.

Over the next four months, the case was continued four more times. On October 29, 2013, the court noted that the state had made a plea offer and that it would allow the defendant a period of time to consider whether to accept or reject it. On December 17, 2013, Cizik informed the court that the defendant intended to reject the plea offer and request a hearing. The court accepted the rejection on the record without noting the potential range of punishments the defendant faced if he was found to be in violation of probation.

On January 10, 2014, Cizik filed a motion to withdraw his appearance in this case, citing an "irretrievable breakdown of the attorney-client relationship." Cizik stated that the defendant had refused on multiple occasions to meet with him or his investigator and therefore he "has been unable to adequately discuss, prepare, and investigate this case . . . ." Within the motion, Cizik noted that the defendant faced "a maximum sentence of nine years if found in violation of his probation." He also stated that he would provide the defendant with notice of the motion to withdraw by mail and would speak to him about it in person at the violation of probation hearing. Cizik later withdrew this motion and maintained his representation of the defendant after speaking to him "at some length."

The violation of probation hearing was conducted on January 24, 2014. At the hearing, Cizik notified the court that the defendant "indicated to me this morning that it is his desire to represent himself in this violation of probation proceeding." The court then canvassed the defendant on his decision to waive his right to counsel.[1] The court asked the defendant if he was under the influence of alcohol, drugs or medications that might impair his ability to make a decision. He also asked whether the defendant understood the nature of the violation of probation charge, to which the defendant replied "not really, I really don't."[2] The defendant then explained that this was his first violation of probation hearing. The court then stated that there are "dangers and disadvantages of not having a lawyer . . . ." The defendant responded by expressing his desire to call a witness that his lawyer did not want to call to testify. After the court explained that he would need a lawyer to subpoena a witness, the defendant replied "[w]ell, I'm going to let him go ahead. . . . He can represent me."

The court then proceeded to the evidentiary phase of the violation of probation hearing.[3] The state began its case by calling the defendant's probation officer. After the state's direct examination, Cizik began cross-examination of the officer but was interrupted when the defendant reasserted his right to self-representation. The court, without conducting any further canvass of the defendant, stated "Okay. . . . [W]ith standby counsel you may proceed with the cross-examination."

The defendant completed the cross-examination of the probation officer. The state then rested and the defendant presented his case. The defendant testified on his own behalf and then presented the testimony of his mother. After the conclusion of the evidentiary phase of the hearing, the court made a finding that the defendant had violated his probation.

The court then proceeded to the dispositional phase of the hearing. At that point, the defendant requested that Cizik be reappointed as counsel for the purpose of presenting argument. Both the state and Cizik presented argument regarding whether the defendant's probation should be modified or revoked, and whether to impose the suspended portion of his original sentence. At the conclusion of the hearing, the court ordered revocation of the defendant's probation and sentenced him to seven and one-half years of incarceration. The defendant appeals from this judgment.

On appeal, the defendant argues that the court abused its discretion when it permitted him to waive his right to counsel without establishing that his waiver was made knowingly and intelligently.[4] Specifically, the defendant argues that the court failed to establish that he understood the range of permissible punishments to which he was exposed. The state argues that, although the court did not expressly advise the defendant on his exposure, the record establishes that the defendant understood the range of permissible punishments faced and thus knowingly waived his right to counsel.

At the outset, we identify the applicable standard of review. "We review [a] trial court's determination with respect to whether the defendant knowingly and voluntarily elected to proceed pro se for abuse of discretion." *State* v. *D'Antonio*, 274 Conn. 658, 709, 877 A.2d 696 (2005). "Whether there has been an intelligent waiver of the right to counsel depends upon the particular facts and circumstances surrounding each case. . . . The state bears the burden of proving that the right to counsel was knowingly and intelligently waived." (Citation omitted.) *State* v. *Frye*, 224 Conn. 253, 260, 617 A.2d 1382 (1992).

"We begin with several well settled principles regarding the constitutional right of an accused to represent himself. The right to counsel and the right to self-representation present mutually exclusive alternatives.[5] A criminal defendant has a constitutionally protected interest in each, but since the two rights cannot be exercised simultaneously, a defendant must choose between them. When the right to have competent counsel ceases as the result of a sufficient waiver, the right of self-representation begins. . . . Put another way, a defendant properly exercises his right to self-representation by knowingly and intelligently waiving his right to representation by counsel. . . . When an accused

manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must knowingly and intelligently [forgo] those relinquished benefits. . . . [Practice Book § 44-3] was adopted in order to implement the right of a defendant in a criminal case to act as his own attorney. . . . Before a trial court may accept a defendant's waiver of counsel, it must conduct an inquiry in accordance with § [44-3], in order to satisfy itself that the defendant's decision to waive counsel is knowingly and intelligently made. . . . Because the § [44-3] inquiry simultaneously triggers the constitutional right of a defendant to represent himself and enables the waiver of the constitutional right of a defendant to counsel, the provisions of § [44-3] cannot be construed to require anything more than is constitutionally mandated." (Citations omitted; footnote added; internal quotation marks omitted.) *State* v. *T.R.D.*, 286 Conn. 191, 202–203, 942 A.2d 1000 (2008).

Although a valid waiver of counsel must be made with an appreciation for the potential range of punishment faced, the defendant "does not possess a constitutional right to a specifically formulated canvass [with respect to this inquiry]. His constitutional right is not violated as long as the court's canvass, whatever its form, is sufficient to establish that the defendant's waiver was voluntary and knowing. . . . In other words, the court may accept a waiver of the right to counsel without specifically questioning a defendant on each of the factors listed in Practice Book § [44-3] *if the record is sufficient to establish that the waiver is voluntary and knowing.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Diaz*, 274 Conn. 818, 831, 878 A.2d 1078 (2005).

Our Supreme Court previously has held that a waiver of counsel is not made knowingly and intelligently when the defendant is unaware of "the range of permissible punishments . . . ." Id.; see id., 833–34 (remanding for new trial when defendant waived right to counsel without being advised of range of prison time he would face upon conviction); see also *State* v. *T.R.D.*, supra, 286 Conn. 206 (remanding for new trial after court failed to conduct adequate canvass to ensure defendant was advised of period of incarceration he faced if convicted). In addition, our appellate courts previously have confronted claims of invalid waiver in the context of a violation of probation hearing. See *State* v. *Connor*, 292 Conn. 483, 973 A.2d 627 (2009); *State* v. *Smith*, 18 Conn. App. 368, 558 A.2d 257 (1989). As both *Connor* and *Smith* also dealt with the issue of the defendant's knowledge of the range of permissible punishments, it is instructive to briefly review both cases.

In *Connor*, our Supreme Court concluded that the defendant's waiver of counsel at a violation of probation

hearing was not made knowingly and intelligently when the court failed to advise him as to the range of possible consequences. *State* v. *Connor*, supra, 292 Conn. 530–32. In 1994, the defendant, Jeffrey Connor, was convicted of sexual assault in the third degree and sentenced to three years in prison, execution suspended, and three years of probation with special conditions. Id., 488. One of the conditions of probation was that he notify his probation officer in the event that he was charged with any criminal offense. Id. In 1997, while he was on probation, Connor was charged with kidnapping, robbery and larceny. Id., 486–88. He subsequently was charged with violating his probation, on the basis that he had failed to report his criminal charges to the probation officer, to attend meetings with his probation officer, and to complete his sex offender treatment program. Id., 489.

At the trial on the kidnapping, robbery and larceny charges, Connor properly waived his right to counsel and represented himself. This waiver was accepted after the court conducted a canvass as to his level of education and his understanding of the charges against him, and the years of incarceration he could face if convicted of them. Id., 502. At the conclusion of trial, the jury found Connor guilty on several of the charges and imposed a total effective term of thirteen years of imprisonment. Id., 505. The day after the sentencing hearing, the court held a hearing on the violation of probation charge, where the court asked Connor if he wished to continue his self-representation. Connor stated that he did and the request was granted without any additional canvass. Id., 504. Following the probation revocation hearing, the court found that the conditions of probation had been violated and sentenced Connor to three years of imprisonment. Id., 504–505. On appeal, our Supreme Court held that, "[a]lthough we acknowledge that a court may be entitled to more leeway with respect to the necessary canvass when, as in the present case, the court just has completed a separate trial involving the same self-represented defendant, minimum constitutional requirements must be satisfied before a defendant will be deemed to have waived his right to counsel." Id., 532. On this basis, the court held that the record contained "no indication that [Connor] was aware of the fact that he faced a possible prison term of up to three years if the court found that he had violated one or more conditions of his probation. In the absence of such a record, [Connor's] waiver is constitutionally inadequate." Id.

In *Smith*, this court reversed the trial court's finding that the defendant, Lawrence Smith, had violated his probation after determining that he had waived his right to counsel without an understanding of the nature of the offense and proceedings, as well as the range of permissible punishments that could be imposed upon him if his probation were revoked. *State* v. *Smith*, supra,

18 Conn. App. 375–77. In so concluding, the court recognized that, although "[a] court is entitled to presume that defense counsel has explained the nature of the offense in sufficient detail"; id., 375; see also *State* v. *Blackwell*, 9 Conn. App. 587, 597, 520 A.2d 634, cert. denied, 203 Conn. 804, 525 A.2d 519 (1987); this presumption does not lead to a further presumption that counsel explained the range of permissible punishments. *State* v. *Smith*, supra, 376. Moreover, the court rejected the state's position that Smith was provided with notice of the permissible punishments when his attorney and his probation officer stated on the record, in his presence, that Smith was "exposed to 'forty-four months' " and that he was "sentenced in both cases to 'four years, execution suspended after time served and five years of probation.' " Id. In rejecting this argument, the court noted that the testimony did not concern the range of permissible punishments, but only established, for the record, the length of Smith's original sentence. Id. Additionally, the court noted that these statements were made eleven days prior to the hearing where Smith waived counsel, and thus did not satisfy the requirement that the waiver be made with knowledge of its consequences. Id. With these principles in mind, we now consider whether the defendant in the present case effectively waived his right to counsel.

We begin our analysis by reviewing the court's canvass under the requirements of the Practice Book. Section 44-3 provides that "a waiver will be accepted only after the judicial authority makes a thorough inquiry and is satisfied that the defendant: (1) Has been clearly advised of the right to the assistance of counsel, including the right to the assignment of counsel when so entitled; (2) Possesses the intelligence and capacity to appreciate the consequences of the decision to represent oneself; (3) Comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and (4) Has been made aware of the dangers and disadvantages of self-representation." Under this standard, it is clear that the court's canvass, on its own, was not a thorough inquiry sufficient to inform the defendant of his rights prior to waiver. The court never advised the defendant that, if found in violation of probation, he could be sentenced to imprisonment for the remainder of his original sentence. The court also never asked any questions which would have created a record that the defendant understood the nature of the charges or proceedings. In fact, the defendant expressly stated that he did not appreciate the nature of the proceedings. The defendant stated that he had never previously been charged with violation of probation and explained that he did not properly understand the two phases of the violation of probation hearing. The court also never explained *the range* of permissible punishments that he faced for violation of

probation, which included the continuation of his probation on the same or modified terms or the imposition of all or part of the suspended portion of his original sentence. See General Statutes § 53a-32 (d). No warning of these potential consequences was provided by the court, nor did the court's canvass inquire as to whether the defendant had an understanding of such consequences.

Our inquiry, however, does not end with the Practice Book. A defendant's "constitutional right is not violated as long as the court's canvass, whatever its form, is sufficient to establish that the defendant's waiver was voluntary and knowing. . . . In other words, the court may accept a waiver of the right to counsel without specifically questioning a defendant on each of the factors listed in Practice Book § [44-3] if the record is sufficient to establish that the waiver is voluntary and knowing." (Internal quotation marks omitted.) *State* v. *Diaz*, supra, 274 Conn. 831. The state argues that the court's canvass was sufficient because the defendant obtained knowledge of the range of punishments from three sources prior to waiving his right to counsel. "The state bears the burden of establishing waiver. *North Carolina* v. *Butler*, 441 U.S. 369, 372–73, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979) . . . ." (Citation omitted.) *State* v. *Wilson*, 199 Conn. 417, 443, 513 A.2d 620 (1986). We now consider the merits of the state's position.

First, the state argues that the defendant obtained knowledge of the range of permissible punishments from statements made by the court prior to the defendant's waiver of counsel. At the hearing, the court stated the following: "[T]he court's first going to take judicial notice of some facts, which . . . need not be testified to because they're all a matter of record that I can take judicial notice of . . . . [On] April 25, 2012, [the court] sentenced [the defendant] on the charges of assault third, possession of narcotics with failure to appear to an effective total sentence of ten years, execution suspended after one year, with three years of probation." The state argues that the court's judicial notice of the original sentence adequately informed the defendant of his exposure. We disagree.

The court's judicial notice only established the length of the defendant's original sentence. The court did not state that the remainder of this sentence could be imposed upon a finding that the defendant had violated his probation. Thus, the court's judicial notice does not establish that the defendant had knowledge of the permissible *range of punishments* to which he was exposed if he was found in violation of probation. See *State* v. *Smith*, supra, 18 Conn. App. 376 (rejecting state's argument that testimony establishing original sentence placed defendant on notice of range of permissible punishments if he was found in violation of probation). We further note that the range of punishments

for a violation of probation can vary greatly from a modification of probation to a revocation of the probation and incarceration for the remainder of the original sentence. Given these facts, we cannot conclude that a statement by the court, acknowledging the length of the defendant's original sentence was adequate to inform him of the possible penalties he faced if he was found to be in violation of probation.

Next, the state argues that the conditions of probation form, reviewed and signed by the defendant, established his understanding of his potential exposure. The form states in relevant part: "If you violate any of the conditions of your probation the court may issue a warrant for your arrest, revoke your probation and require you to serve the sentence imposed or impose a shorter sentence." The defendant signed and dated the form on July 1, 2013. The state argues that this evidence provides actual notice to the defendant of his exposure if he was found to have violated his probation. We disagree.

Although the probation form notified the defendant of the possible punishments when he signed it, it did not establish that he was aware of this information when he later chose to waive counsel. In this case, the violation of probation hearing was continued five different times and was not heard until January 24, 2014. Thus, more than five and one-half months had passed between the time he signed the probation form and the time he waived his right to counsel. Accordingly, the probation form itself does not establish that the defendant was aware of the possible penalties he faced at the time of the hearing. See *United States* v. *Erskine*, 355 F.3d 1161, 1171 (9th Cir. 2004) (waiver of counsel not intelligent when "record [did] not reveal that [defendant] understood the possible penalty he faced *at the time* of his . . . waiver [of counsel]" [emphasis added]); see also *State* v. *Smith*, supra, 18 Conn. App. 376 (notification of punishment made eleven days prior to waiver of counsel did not establish that defendant "sufficiently understood" range of permissible punishments). As we are required to make "every reasonable presumption against waiver of fundamental constitutional rights"; (internal quotation marks omitted) *State* v. *Gore*, 288 Conn. 770, 777, 955 A.2d 1 (2008); we cannot presume that the defendant understood the penalty for violating probation on the basis of a form he had reviewed and signed nearly six months prior to waiving counsel.

Finally, the state argues that Cizik's motion to withdraw, which stated that the defendant "face[d] a maximum sentence of nine years if found in violation of his probation," supports a presumption that he counseled the defendant on the possible punishment if he was found to be in violation of probation. We disagree.

On January 10, 2014, Cizik filed a motion to withdraw

his appearance on the basis that the defendant had refused to meet with him, and that there had been an "irretrievable breakdown of the attorney-client relationship." Cizik informed the court that the defendant had refused to meet with him or his investigator. On that basis, Cizik believed that he was unable to "provide effective assistance of counsel" to the defendant. Given Cizik's admitted difficulties in communicating with the defendant, we cannot presume that he properly informed his client of the range of permissible punishments. Moreover, although the motion states that Cizik will notify the defendant of this motion, there is no evidence that a copy of the motion was made available to the defendant. On the basis of these facts, we cannot presume that the defendant was notified of the range of permissible punishments through either Cizik's motion or his prior representation of the defendant before the hearing date.

In conclusion, the record before us does not provide us with sufficient assurance that the defendant understood the range of permissible punishments he faced if he were found to be in violation of his probation. The United States Supreme Court defines a valid waiver of a constitutional right as the "intentional relinquishment or abandonment of a known right." *Johnson* v. *Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). Under this standard, we must "indulge every reasonable presumption *against* waiver of fundamental constitutional rights and . . . will not presume acquiescence in the loss of fundamental rights." (Emphasis added; internal quotation marks omitted.) *State* v. *Gore*, supra, 288 Conn. 777. On the basis of the record before us, we cannot conclude that the defendant's waiver was made knowingly and intelligently.

The judgment is reversed and the case is remanded for a new violation of probation hearing.

In this opinion the other judges concurred.

[1] The court engaged in the follow colloquy:

"The Court: All right. Okay, Mr. Woods, I have to speak some words to you and you can sit—you can remain seated. You have the right of course to waive counsel and represent yourself, but I can only accept that waiver if you're advised that you do have the legal right to a lawyer. You know that, right?

"[The Defendant]: Oh, yeah.

"The Court: Yes. Okay. Good. And right now as I'm speaking to you you're not under any influence of any alcohol, drugs or medication that would impair your ability to think and act, are you?

"[The Defendant]: No.

"The Court: Okay. Good. And did you understand the nature of the charges here, the [violation of probation] and what it's all about?

"[The Defendant]: Not really, Your Honor.

"The Court: You don't understand—

"[The Defendant]: Not really, I really don't.

"The Court: You don't understand the violation of probation? You've had them before in your past.

"[The Defendant]: No. I've never been on probation before in my life.

"The Court: So you don't understand what a violation of probation is? This might mean I'm going to have to keep your lawyer in.

"[The Defendant]: I don't—no, I really don't.

"The Court: Well, I just read to you the two allegations that they're talking

about here about reporting, about your address and so forth and so on. You don't—do you understand that? They're saying that's a violation of probation.

"[The Defendant]: Yes, Your Honor, but the problem is that I can't prove—I can't prove that I didn't violate the probation hearing without calling in. The guy who talked to me at the conference—video conference, because I told him specifically that I didn't have anywhere to stay, so—

"The Court: Okay. This—no, don't—don't get lost here. I'm just talking about do you understand the nature of the charges against you, it's violation of probation. You got it?

"[The Defendant]: Yeah. I have a violation of probation, but the dispute—

"The Court: That's all—that's all I'm asking—okay. And you know the law is complicated, as I know you know, and are you aware of the dangers and disadvantages of not having a lawyer right with you because there's a lot of technical stuff that sometimes comes out here. Are you comfortable with that?

"[The Defendant]: This is what I'm saying, Your Honor. Mr. Cizik doesn't want to call the witnesses and I want to call the witnesses, so that's the problem that we have.

"The Court: The only possible witnesses would be your mother and the probation officer.

"[The Defendant]: And the guy who talked to me at a video conference, which I told him that I didn't have a place to stay and he told me—

"The Court: That's why you should have a lawyer represent you here if you want to present that information and subpoena somebody. All right—

"[The Defendant]: Well, I'm going to let him go ahead. Go ahead, he could do it.

"The Court: Okay—he can what?

"[The Defendant]: He can represent me. Go ahead.

"The Court: Okay. Good enough. All right. So the state may call its first witness please."

[2] As the state indicates in its brief, it is unclear whether the defendant did not understand the nature of the charge, or if he was expressing his position that he did not believe he had violated his probation.

[3] Our Supreme Court has "recognized that revocation of probation hearings, pursuant to [General Statutes] § 53a-32, are comprised of two distinct phases, each with a distinct purpose. . . . In the evidentiary phase, [a] factual determination by a trial court as to whether a probationer has violated a condition of probation must first be made. . . . In the dispositional phase, [i]f a violation is found, a court must next determine whether probation should be revoked because the beneficial aspects of probation are no longer being served." (Citations omitted; internal quotation marks omitted.) *State* v. *Preston*, 286 Conn. 367, 375–76, 944 A.2d 276 (2008).

[4] Although the defendant's claim has not been preserved, the defendant seeks to prevail under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). "Under *Golding*, the defendant can prevail on [an unpreserved] claim only if [*all* of] the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; internal quotation marks omitted.) *State* v. *T.R.D.*, 286 Conn. 191, 198–99 n.9, 942 A.2d 1000 (2008). We conclude that the record is adequate for review and that the claim is of a constitutional magnitude. Accordingly, we consider the merits of the defendant's claim. See *State* v. *Fagan*, 280 Conn. 69, 90, 905 A.2d 1101 (2006) ("[t]he first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial" [internal quotation marks omitted]), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007).

[5] "The sixth amendment to the United States constitution provides in relevant part: 'In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense.' The sixth amendment right to counsel is made applicable to state prosecutions through the due process clause of the fourteenth amendment. See *Gideon* v. *Wainwright*, 372 U.S. 335, 342, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963)." *State* v. *Connor*, 292 Conn. 483, 506 n.13, 973 A.2d 627 (2009).