******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# STATE OF CONNECTICUT *v.* DAYVON WILLIAMS
## (AC 42612)

Prescott, Moll and Suarez, Js.

*Syllabus*

Convicted of the crime of sexual assault in the second degree after a trial to the court, the defendant appealed to this court, claiming that the trial court deprived him of his constitutional right to the assistance of counsel by allowing him to represent himself and thereafter abused its discretion by failing to order a competency hearing or to appoint counsel for him. The defendant had been represented by three public defenders during pretrial proceedings before two different trial judges in the several months prior to trial, when he sought to dismiss the public defenders and to represent himself. After the defendant rejected the state's offer of a plea agreement, the court canvassed him regarding his request to represent himself, and found that he knowingly, intelligently and voluntarily waived his right to counsel and was qualified to represent himself. None of the public defenders at any time during those proceedings expressed concerns to the court about the defendant's competence to stand trial or indicated that he suffered from a mental illness or incapacitation. *Held*:

1. The trial court did not abuse its discretion in determining that the defendant was competent to represent himself and that he made a knowing, voluntary and intelligent waiver of his right to counsel:

   a. The record supported the court's finding that the defendant was competent to waive his right to counsel and to represent himself, as he had expressed his desire to represent himself on two occasions before different judges prior to being allowed to represent himself, he was consistently able to articulate logical reasons for that desire, his responses to the court during its canvass of him showed that he comprehended the disadvantages and dangers of representing himself, and he indicated that he understood the elements of the crime with which he was charged and the range of penalties associated with a conviction.

   b. Contrary to the defendant's contentions, the court's canvass of him provided sufficient information to determine whether he knowingly, voluntarily and intelligently waived his right to counsel, as the record was devoid of facts that should have given rise to any specific concerns in the court's mind: the court determined that the defendant had the intelligence and capacity to appreciate the consequences of his decision to represent himself, it made him aware of the penalties to which he was exposed and the great dangers in self-representation, such as making self-incriminating statements at trial, and its questions demonstrated that he understood that he would be responsible for filing motions, legal research, selecting a jury, and complying with the rules of evidence and criminal procedure; moreover, although the court did not explicitly advise the defendant of the statutory maximum and mandatory minimum sentences he faced, his statements to the court and discussions with the state regarding the plea offer sufficiently demonstrated that he was aware of the prison time to which he was exposed if convicted, and, contrary to his unsupported assertion, the court was not required to advise him that he would need to register as a sex offender if he were convicted or to ask him or his counsel if he had any mental health issues; furthermore, the defendant's education level and lack of experience as a self-represented litigant did not necessarily mean that his election to represent himself was not intelligently made, as his responses to the court about his educational background, whether he had a history of representing himself and his awareness of the requirements of self-representation suggested that he understood those obligations.

2. The defendant could not prevail on his unpreserved claim that, because his postcanvass conduct constituted substantial evidence of mental impairment, the trial court abused its discretion by failing to order a competency hearing or to appoint counsel for him after it granted his request to represent himself: the record reflected that the defendant interacted intelligently with the court, as he advanced arguments in

support of his defense and actively participated in the trial, at no point after its canvass of him did the court express concerns about his competence, his actions after the state rested its case demonstrated a basic understanding of the judicial process and a trial strategy for creating reasonable doubt about the veracity of the allegations against him, and, even if some of his arguments at trial were not well grounded in the law and his representation lacked the hallmarks of an attorney skilled in the practice of law, the defendant showed that he had a rational understanding of the proceedings by challenging the sufficiency of the evidence that was before the court.

Argued January 7—officially released August 3, 2021

*Procedural History*

Substitute information charging the defendant with the crime of sexual assault in the second degree, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Blawie, J.*; judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Jennifer B. Smith*, for the appellant (defendant).

*Samantha Oden*, deputy assistant state's attorney, with whom, on the brief, were *Paul J. Ferencek*, state's attorney, and *Michelle Manning*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SUAREZ, J. The defendant, Dayvon Williams, appeals from the judgment of conviction, rendered after a trial to the court, of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (3). On appeal, the defendant claims that the court (1) deprived him of his constitutional right to the assistance of counsel by allowing him to represent himself, and (2) abused its discretion by failing, sua sponte, to order a competency hearing or to appoint counsel for him after it granted his request to represent himself. We disagree and, accordingly, affirm the judgment of the trial court.

The following procedural history is relevant to this appeal. On May 24, 2018, the state filed a long form information charging the defendant with second degree sexual assault in violation of § 53a-71 (a) (3) related to his alleged conduct involving a female victim[1] in Norwalk on May 6, 2017. The defendant was represented by three public defenders throughout the pretrial proceedings. Attorney Barry Butler first represented the defendant at a hearing on August 31, 2017, in which it was determined that the defendant qualified for public defender assistance. The court, *White, J.*, appointed the Office of the Public Defender to represent the defendant, and, on September 1, 2017, Attorney Howard Ehring filed an appearance on his behalf.

On October 3, 2017, the defendant filed two motions to dismiss Butler and Ehring from his case. On the same day, he filed an application and writ of habeas corpus ad testificandum to "regain [his] extradition rights . . . ."[2] On October 11, 2017, the defendant, accompanied by Ehring, appeared before the court, *Blawie, J.* Ehring informed the court that the defendant had called the state's attorney's office and expressed his intention to terminate public defender services and represent himself. The court asked the defendant if he wanted to represent himself. The defendant responded: "[T]hat's what it's looking like because [Ehring] has a problem with communication, and I feel like I can speak up for myself." The court began to canvass the defendant and stated that, if he represented himself, he would be held to the same standards as a lawyer. The court explained that, if he so requested, it would be willing to appoint standby counsel who could provide the defendant with assistance. The court then asked the defendant if he understood the elements of the offense with which he was charged, which led to a discussion about whether the defendant previously had a chance to review the arrest warrant.

The court did not finish its canvass of the defendant and instead began discussing the defendant's motion to regain his extradition rights. Before the hearing ended, the court "urge[d]" the defendant "to try to collaborate with Attorney Ehring." The defendant reiter-

ated that he was having difficulty communicating with Ehring and stated that he had the same issues with Butler. The court responded that "the right to counsel does not include the right to counsel of your choice" and that it was "not yet making a finding of self-representation."

On November 13, 2017, the court, *Blawie, J.*, held a hearing and again discussed the issue of whether to terminate the public defender services and to allow the defendant to represent himself. The defendant argued that his motion to dismiss Ehring should be granted on the grounds that Ehring did not review his case with him and failed to investigate information that he had provided to Ehring. The defendant expressed frustration with the length of time he had been detained, stating: "I was arrested July 28 [2017]; I've been sitting here three months with nothing being said to me about my case." The court again started to canvass the defendant and informed him of the risks of self-representation. The court stated: "[W]hen you're indigent, you're entitled to the Office of Public Defender's services, but appointment of counsel does not mean appointment of counsel of your choice. You have two very capable lawyers in this office; they're both qualified to handle this matter . . . ." The court reminded the defendant that it would appoint standby counsel upon his request but that having standby counsel was "far different . . . from having representation in a full capacity . . . ." The court noted that Ehring had represented hundreds of people in the defendant's position over the course of thirty-two years as a public defender and that he had the defendant's "best interest in mind . . . ." The court, however, did not finish its canvass at this time. Instead, at the end of the hearing, the court directed a judicial marshal to bring the defendant to a conference room in the courthouse so that he could speak privately with Ehring.

On December 13, 2017, the defendant appeared before the court, *White, J.*, with Attorney Benjamin Aponte from the Office of the Public Defender. The state represented that the defendant had filed motions to remove Ehring from his case and noted that, during previous hearings at which these motions were heard, the court "did not get through the entire canvass." The state then requested that the court ask the defendant if he still wanted to represent himself and, if so, to canvass him. The following exchange occurred between the court and the defendant:

"The Court: Okay. Mr. Williams, do you want to represent yourself?

"The Defendant: At a point in time, I felt like I had to speak up for myself and represent myself. Recently, Attorney Aponte actually came—came and visited me in Bridgeport Correctional Center. He ha[s] taken the initiative to do that, so I will like to go forward with

Aponte, if I can.

"The Court: I'm going to take what you said as a no, that you don't want to represent yourself now. Am I—is that correct?

"The Defendant: Yes."

The court continued the hearing with Aponte as counsel for the defendant.

On February 2, 2018, the state made an offer to resolve the case through a plea agreement in exchange for a sentence of ten years of incarceration, suspended after four years, followed by fifteen years of probation. The defendant rejected this offer. On the same date, the defendant appeared before the court, *White*, *J*., to address his decision to reject the offer. The court asked the defendant if he "had enough time to speak to [his] attorney about the offer . . . ." The defendant responded, "no." The court, the defendant, Aponte, and the prosecutor then engaged in the following colloquy:

"The Court: Okay. We'll pass it and talk to your lawyer.

"[The Defendant]: Excuse me, I would like to speak on the record. May I address the court, please?

"The Court: It's not a good idea, you might say something to hurt your own case and—

"[The Defendant]: Not at all—sorry, Your Honor.

"The Court: Okay. If you want to say something, I'll listen, but it's really not a good idea.

"[The Defendant]: Honorable Judge White, I am the defendant, and I don't feel as if I'm being treated fairly in this matter here. It's been an ongoing case for nine months now. It's been—information on my—against me for nine months now. I've been in the state of Connecticut for six months, going on a complete seven, because I was arrested in New York City, and I've been held in my city jail for nineteen days, to be exact. And since I've been here in the state of Connecticut, I have [had] more than enough time to speak with lawyers, but they never showed up to speak to me, so I feel like I'm being treated unfairly. My eighth amendment[3] right is being violated once again. I previously dismissed Ehring, who's sitting over there to the left of me. And I feel like I need to initiate pro se and be given a law library or something to exercise my rights from here on because—

"The Court: Sir, are you telling me you want to represent yourself?

"[The Defendant]: I'm gonna have to—I'm going to have to.

"The Court: No, you don't have to. You can't afford counsel, and you have counsel provided for you, so it's not true that, that—

"[The Defendant]: Yes, I want to initiate pro se.

"The Court: Okay. How far did you go in school?

"[The Defendant]: G.E.D. equivalency of a high school diploma.

"The Court: Okay. Have you ever represented yourself in a criminal case before?

"[The Defendant]: No, I haven't. I'd be willing to do so.

"The Court: Do you understand the elements of the offense that you're charged with?

"[The Defendant]: Yes.

"The Court: Do you understand the range of penalties?

"[The Defendant]: Yes.

"The Court: Do you understand that you're going to have to file motions on your own?

"[The Defendant]: Yes.

"The Court: Do you understand that you're gonna have to do legal research on your own?

"[The Defendant]: Yes, and speaking of which, I filed two speedy trial motions—

"The Court: Let me—sir, let me finish asking questions and then—

"[The Defendant]: I'm sorry.

"The Court: —I'll give you a chance to speak further.

"[The Defendant]: Yes, Your Honor.

"The Court: Do you understand that—I take it you've elected to have a jury trial, is that right?

"[The Defendant]: At this moment, I have to speak— I'm undecided at this moment.

"The Court: Well, I'm gonna assume that you're going to have a jury trial instead of a court trial. If you have a jury trial, you're gonna have to pick the jury on your own, you're going to have to make proper motions; you understand that?

"[The Defendant]: Understood.

"The Court: And whoever the trial judge is will probably give you some leeway, but you're going to have to comply with the rules of evidence; do you understand that?

"[The Defendant]: Yes.

"The Court: And the rules of procedure and filing any proper motions, so you understand all that?

"[The Defendant]: Yes.

"The Court: And do you understand that there are great dangers in self-representation?

"[The Defendant]: Yes.

"The Court: Okay. I just want to make sure you understand and just tell you that, if you try the case yourself, you might ask questions or make comments that are incriminating in nature, or it might put you in a bad light, and you're gonna talk, and you're gonna be stuck with what you have to say. And it's really not a good idea, in most instances, for people to represent themselves. I think it was Abraham Lincoln who said that a lawyer who represents himself has a fool for a client; somebody said that.

"[The Defendant]: I'm familiar.

"The Court: There's a lot of wisdom in that. Do you understand what I'm telling you?

"[The Defendant]: I'm familiar.

"The Court: Okay. And you—obviously, you understand that, if you can't afford counsel, I would provide one for you at no cost to you. You understand that?

"[The Defendant]: Yes. At any moment?

"The Court: And you have a—

"[The Defendant]: If I—

"The Court: Listen to me.

"[The Defendant]: —choose to give up my status—

"The Court: Please listen to me and let me finish. So, you understand that you have a constitutional right to be represented by counsel and you want to give up that right and represent yourself, is that correct? Is it?

"[The Defendant]: Yes.

"The Court: Is there anybody forcing you or threatening you to do this?

"[The Defendant]: No.

"The Court: Do you want to look at me, sir? So, you're doing what you're doing voluntarily and of your own free will?

"[The Defendant]: Yes.

"The Court: Mr. Aponte, do I need to ask him anything else?

"[Attorney] Aponte: No, Your Honor, thank you.

"The Court: State, do I need to ask him anything else?

"[The Prosecutor]: No, Your Honor.

"The Court: All right. I'm gonna make a finding that [the defendant] is knowingly, intelligent[ly], and voluntarily waiving his right to counsel, and he's qualified to represent himself. And I am removing a public defender at this point; at some later point, if it's appropriate, I may ask the public defender to step in as standby counsel; it's discretionary with the court. That would just mean

that you'd have one of the public defenders, probably—

"[The Prosecutor]: Judge, I—

"The Court: —Mr. Aponte, there to answer any questions you might have, but Mr. Williams, please pay attention. It's gonna be up to you to fully represent yourself. The public defender doesn't have any more responsibility with this case.

"[The Defendant]: Understand—

"The Court: Do you understand what I just told you?

"[The Defendant]: Yes." (Footnote added.)

The court then advised the defendant about the mandatory minimum sentence for the crime with which he was charged. The following exchange occurred between the court and the defendant:

"The Court: I should add, before the state's attorney goes on, there's a mandatory minimum—

"[The Defendant]: Ten years.

"The Court: Well, no not a mandatory minimum—

"[The Defendant]: I mean, nine months, I'm sorry.

"The Court: Yes. A mandatory minimum of nine months sentence.

"[The Defendant]: Nine months, ten—okay."

On June 5, 2018, the date on which jury selection was to begin, the defendant waived his right to a jury trial and elected a court trial. The court, *Blawie, J.*, canvassed the defendant and found that he had knowingly, voluntarily, and intelligently waived his right to a jury trial. On June 18, 2018, a trial was held before the court, *Blawie, J.* After the state rested, the defendant orally moved for a judgment of acquittal on the ground that the evidence was insufficient to support a guilty verdict. The court denied the motion. The defendant then rested without presenting evidence. On June 19, 2018, the court found the defendant guilty of second degree sexual assault in violation of § 53a-71 (a) (3). On October 1, 2018, the court sentenced the defendant to ten years of incarceration, execution suspended after six years, and twenty years of probation. As part of the special conditions of probation, the court ordered the defendant to register as a sex offender for a period of ten years pursuant to General Statutes § 54-252. This appeal followed.

Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that the court deprived him of his constitutional right to the assistance of counsel by allowing him to represent himself. We disagree.

In this claim, the defendant raises three distinct argu-

ments. First, he argues that he was not competent to waive his right to counsel. Second, he argues that he was not competent to represent himself.[4] Third, he argues that he did not knowingly, voluntarily, and intelligently waive his right to counsel.

We begin by setting forth the legal principles governing this claim. "The sixth amendment to the United States constitution provides: 'In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense.' This right is made applicable to state criminal prosecutions through the fourteenth amendment's due process clause. See, e.g., *Gideon* v. *Wainwright*, 372 U.S. 335, 342, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963). Embedded within the sixth amendment right to assistance of counsel is the defendant's right to elect to represent himself, when such election is voluntary and intelligent. See, e.g., *Faretta* v. *California*, 422 U.S. 806, 807, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

"We have long recognized this important right. See, e.g., *State* v. *Flanagan*, 293 Conn. 406, 418, 978 A.2d 64 (2009); *State* v. *Brown*, 256 Conn. 291, 302, 772 A.2d 1107, cert. denied, 534 U.S. 1068, 122 S. Ct. 670, 151 L. Ed. 2d 584 (2001). We have also observed, however, that '[t]he right to counsel and the right to self-representation present mutually exclusive alternatives.' . . . *State* v. *Flanagan*, supra, 418. Although both rights are constitutionally protected, a defendant must choose between the two. Id. We require a defendant to clearly and unequivocally assert his right to self-representation because the right, unlike the right to the assistance of counsel, protects interests other than providing a fair trial, such as the defendant's interest in personal autonomy. *State* v. *Jones*, 281 Conn. 613, 648, 916 A.2d 17, cert. denied, 552 U.S. 868, 128 S. Ct. 164, 169 L. Ed. 2d 112 (2007). 'Put another way, a defendant properly exercises his right to self-representation by knowingly and intelligently waiving his right to representation by counsel.' . . . *State* v. *Flanagan*, supra, 418.

"Once the right has been invoked, the trial court *must* canvass the defendant to determine if the defendant's invocation of the right, and simultaneous waiver of his right to the assistance of counsel, is voluntary and intelligent. See, e.g., *State* v. *Pires*, 310 Conn. 222, 231, 77 A.3d 87 (2013). The United States Supreme Court has explained: '[I]n order competently and intelligently to choose self-representation, [a defendant] should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.' . . . *Faretta* v. *California*, supra, 422 U.S. 835. That court further explained that a record that affirmatively shows that the defendant is 'literate, competent, and understanding, and that he [is] voluntarily exercising his informed free will' is sufficient to support

a finding that the defendant voluntarily and intelligently invoked his right. Id. Practice Book § 44-3[5] serves to guide our trial courts in making this inquiry. *State* v. *Flanagan*, supra, [293 Conn. 419]. Nevertheless, '[b]ecause the . . . inquiry [under Practice Book § 44-3] simultaneously triggers the constitutional right of a defendant to represent himself and enables the waiver of the constitutional right of a defendant to counsel, the provision of § [44-3] cannot be construed to require anything more than is constitutionally mandated.' . . . Id. Thus, the court need not question a defendant regarding all of the Practice Book § 44-3 factors. *State* v. *T.R.D.*, 286 Conn. 191, 204, 942 A.2d 1000 (2008). Instead, the analysis under that rule of practice is designed to help the court answer two questions: '[W]hether a criminal defendant is minimally competent to make the decision to waive counsel, and . . . whether the defendant actually made that decision in a knowing, voluntary and intelligent fashion.' . . . *State* v. *D'Antonio*, 274 Conn. 658, 712, 877 A.2d 696 (2005). To date, courts have recognized four instances in which a court may deny a defendant's timely request to represent himself. A defendant's request may be denied when a court finds that the defendant is not competent to represent himself; see, e.g., *Indiana* v. *Edwards*, 554 U.S. 164, 174, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008); or that he has not knowingly and intelligently waived his right to the assistance of counsel. See, e.g., *Faretta* v. *California*, supra, 835. A court can also deny such request because it was made for dilatory or manipulative purposes; e.g., *State* v. *Jordan*, 305 Conn. 1, 22, 44 A.3d 794 (2012); see also *United States* v. *Mackovich*, 209 F.3d 1227, 1238 (10th Cir.), cert. denied, 531 U.S. 905, 121 S. Ct. 248, 148 L. Ed. 2d 179 (2000); or because the defendant's behavior is disruptive or obstructive. See, e.g., *Faretta* v. *California*, supra, 834 n.46; *State* v. *Jones*, supra, [281 Conn. 648]." (Emphasis in original; footnote in original.) *State* v. *Braswell*, 318 Conn. 815, 827–29, 123 A.3d 835 (2015).

"A defendant is presumed to be competent [to stand trial]." General Statutes § 54-56d (b). However, our Supreme Court, relying on *Indiana* v. *Edwards*, supra, 554 U.S. 164, has held that, "when a trial court is presented with a mentally ill or mentally incapacitated defendant who, having been found competent to stand trial, elects to represent himself, the trial court also must ascertain whether the defendant is, in fact, competent to conduct the trial proceedings without the assistance of counsel." *State* v. *Connor*, 292 Conn. 483, 527–28, 973 A.2d 627 (2009) (*Connor I*).[6] In *Connor I*, the court "conclude[d] . . . in the exercise of [its] supervisory authority over the administration of justice, that a defendant, although competent to stand trial, may not be competent to represent himself at that trial due to mental illness or mental incapacity." Id., 506. Therefore, "upon a finding that a mentally ill or mentally incapaci-

tated defendant is competent to stand trial and to waive his right to counsel at that trial . . . trial court[s] must make another determination, that is, whether the defendant also is competent to conduct the trial proceedings without counsel." Id., 518–19. The issue "is not whether the defendant lack[s] the technical legal skill or knowledge to conduct the trial proceedings effectively without counsel. . . . Rather, the determination of his competence or lack thereof must be predicated solely on his ability to carry out the *basic tasks* needed to present his own defense without the help of counsel . . . notwithstanding any mental incapacity or impairment serious enough to call that ability into question." (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 529–30. "The United States Supreme Court has stated the basic tasks needed to present [one's] own defense include organiz[ing] [a] defense, making motions, arguing points of law, participating in voir dire, questioning witnesses, and addressing the court and jury . . . ." (Internal quotation marks omitted.) *State* v. *Connor*, 170 Conn. App. 615, 622, 155 A.3d 289, cert. granted, 325 Conn. 920, 163 A.3d 619 (2017) (appeal withdrawn January 5, 2018).

With these principles in mind, we now consider whether the court erred in allowing the defendant to represent himself. We review a trial court's decision regarding a defendant's request to proceed as a self-represented litigant under the abuse of discretion standard of review. See, e.g., *State* v. *Braswell*, supra, 318 Conn. 830. "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . In general, abuse of discretion exists when a court could have chosen different alternatives but has decided the matter so arbitrarily as to vitiate logic, or has decided it based on improper or irrelevant factors. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Citations omitted; internal quotation marks omitted.) *State* v. *Connor*, supra, 170 Conn. App. 621.

A

We first address two portions of the defendant's claim that are legally and factually interrelated. First, the defendant argues that he was not competent to waive his right to counsel. Second, the defendant argues that he was not competent to represent himself. Because a substantially similar analysis governs both claims, we address these arguments simultaneously. With respect to these arguments, the defendant asserts that the court did not adequately consider the heightened require-

ments articulated in *Edwards* and mandated by our Supreme Court in *Connor I*. The defendant points to several occurrences that took place prior to the February 2, 2018 canvass during which his behavior demonstrated that he might have had a mental impairment. He asserts that he was "disruptive, repeatedly interrupted the court, sometimes refused to respond to the court's questions, referred to himself in the third person . . . showed signs of memory loss and confusion, had difficulty following the court's instructions, and was unable to perform basic tasks that were necessary to his defense . . . ." He also argues that he was "unable to organize his defense and focus on relevant law pertaining to the sexual assault charge." We disagree.

First, we note that the defendant was represented by three different public defenders over the course of several months prior to the February 2, 2018 canvass. He expressed his desire to represent himself on two separate occasions before a different judge prior to this canvass. His various attorneys never expressed concerns to the court about the defendant's competency to stand trial, thereby requiring an evaluation pursuant to § 54-56d, nor did they indicate to the court that he suffered from a mental illness or incapacitation.[7]

Second, we are not persuaded that the precanvass conduct on which the defendant relies should have alerted the court to concerns about his competency to waive his right to counsel or to represent himself.[8] Our review of the record reveals that the defendant was consistently able to articulate logical reasons for his desire to represent himself. Specifically, he was unhappy with the representation he received from his public defenders, and he indicated that they did not visit him frequently, did not review his case with him, and failed to investigate information that might have helped his case. His responses to the court's questions at the pretrial hearings show that he comprehended the disadvantages and dangers of representing himself, and he indicated that he understood the elements of the crime with which he was charged and the range of penalties associated with a conviction.

In support of this claim, the defendant relies heavily on *State* v. *Connor*, supra, 292 Conn. 483. *Connor I*, however, is easily distinguishable from the present case. In *Connor I*, the court repeatedly was made aware of the possibility that the defendant suffered from a significant mental health problem, possibly related to his having suffered a stroke prior to the time of his criminal trial. Id., 489–504. In *Connor I*, defense counsel, the state, and the defendant himself alerted the court to the fact that the defendant's competence to stand trial and to waive his right to counsel was a significant issue to be decided at trial.[9] Id. In the absence of evidence of such nature in the present case, we conclude that the record supports a finding that the defendant was competent

to waive his right to counsel and that he was competent to represent himself at trial. Accordingly, these portions of the defendant's claim are unpersuasive.

B

We next address the defendant's claim that the court abused its discretion in determining that his waiver of the right to counsel was knowing, voluntary, and intelligent because the court "failed to comply with the federal constitutional standard and Practice Book § 44-3's requirement to conduct a 'thorough inquiry' into whether the defendant was truly knowingly, voluntarily, and intelligently waiving his right to counsel." We disagree with the defendant's claim.

In this claim concerning the adequacy of the court's canvass, the defendant raises three main arguments, namely, that the court did not make him aware of the "risks and disadvantages" of self-representation, did not make him aware of the penalties to which he was exposed, and failed to elicit whether he possessed "the intelligence and capacity" to appreciate the consequences of his decision to represent himself.[10]

We note that a defendant "does not possess a constitutional right to a specifically formulated canvass . . . ." (Internal quotation marks omitted.) *State* v. *Diaz*, 274 Conn. 818, 831, 878 A.2d 1078 (2005). Instead, "[h]is constitutional right is not violated as long as the court's canvass, whatever its form, is sufficient to establish that the defendant's waiver was voluntary and knowing." (Internal quotation marks omitted.) Id.

With respect to the defendant's claim concerning the risks and disadvantages of self-representation, our previous recitation of the procedural history of this case reflects that the defendant expressed his desire to represent himself at two hearings prior to February 2, 2018, during which proceedings the court, *Blawie, J.*, twice attempted to canvass him and advised him about the risks of self-representation. On February 2, 2018, the court, *White, J.*, canvassed the defendant. The court asked questions that were sufficient to demonstrate that the defendant knew what was expected of him if he chose to represent himself. The court asked if the defendant understood that he would be responsible for filing motions, conducting legal research, selecting a jury, and complying with the rules of evidence and criminal procedure. The court advised him that there are great dangers in self-representation, such as making self-incriminating statements at trial.[11] We are not persuaded that the court failed to advise the defendant about the dangers and disadvantages of self-representation.

The defendant next argues that the court failed to advise him of the range of penalties that he would face upon conviction, as is required by *State* v. *Diaz*, supra, 274 Conn. 828, and *State* v. *T.R.D.*, supra, 286 Conn.

206. The defendant asserts that the court should have specifically told him during its canvass that he would face a maximum sentence of ten years of imprisonment if convicted.[12] In response to this argument, the state points to the fact that it met with the defendant on February 2, 2018, to discuss a plea offer, and that the defendant attended a hearing on the same date to discuss his rejection of that offer. The state acknowledges that, at this hearing, the court did not inform the defendant during the canvass about the potential exposure should he be convicted of second degree sexual assault. Nevertheless, the state argues that this error was harmless because, "[f]rom this offer, which was put on the record, the trial court reasonably could infer that the defendant had a meaningful appreciation of his potential punishment." We agree with the state.

In *Diaz*, the defendant waived his right to counsel after being canvassed by the trial court pursuant to Practice Book § 44-3. *State* v. *Diaz*, supra, 274 Conn. 828. During its canvass, the court referred only to the charges pending against the defendant as "very substantial" and to his cases as "big prison time cases . . . ." (Internal quotation marks omitted.) Id., 832. The defendant represented himself at trial, and a jury found him guilty of all counts as charged. Id., 827. On appeal, the defendant's primary claim was that his waiver of counsel was not knowing, voluntary, and intelligent "by virtue of the trial court's failure to inform him of the range of possible penalties that he would face upon conviction." Id., 828. Our Supreme Court agreed and concluded that the defendant was entitled to a new trial. Id., 828, 834. The court stated that the trial court's comments "provided no real guidance to the defendant with respect to the actual prison time to which he was exposed." Id., 832.

In *T.R.D.*, a defendant claimed that "his waiver of counsel could not be found [to have been] knowing and intelligent in the absence of anything in the record demonstrating that the defendant knew the possible term of incarceration . . . ." *State* v. *T.R.D.*, supra, 286 Conn. 198. The state conceded "that the court never specifically advised the defendant of the range of possible penalties he faced upon conviction." Id., 202. Our Supreme Court concluded that "there is simply no evidence present in the record from which we could infer that the defendant had any meaningful appreciation of the period of incarceration he faced if convicted of the charges he faced." Id., 206. Accordingly, the court granted the defendant a new trial. Id.

In the present case, however, the record reflects that the defendant had a meaningful appreciation of the possible penalties he faced if convicted after trial. At the February 2, 2018 hearing, the state informed the court that its plea offer was "[t]en [years of incarceration] suspended after four [years], fifteen years proba-

tion . . . ." The defendant rejected that offer and elected to represent himself at trial. During the required canvass, the court asked the defendant if he understood the "range of penalties," and he said that he did understand the range of penalties. Immediately after its canvass, the court informed the defendant that there was a mandatory minimum sentence. Before the court could state the length of the minimum, the defendant interjected and said, "[t]en years." After the court informed him that he was mistaken, the defendant said, "I mean, nine months, I'm sorry." The court confirmed that the defendant was correct, to which he responded, "[n]ine months, ten—okay." Thus, even though the court did not explicitly advise the defendant of the statutory maximum sentence and the mandatory minimum sentence, the defendant's statements to the court, along with his discussions with the state regarding his plea offer that took place immediately prior to the canvass, sufficiently demonstrate that he was aware of the actual prison time to which he was exposed if convicted.

Additionally, the defendant asserts that, pursuant to *State* v. *Davenport*, 127 Conn. App. 760, 15 A.3d 1154, cert. denied, 301 Conn. 917, 21 A.3d 464 (2011), the court was required to advise him that he would need to register as a sex offender if convicted but failed to do so. The defendant misconstrues *Davenport*. In *Davenport*, this court held that, when a criminal defendant is required to register as a sex offender pursuant to General Statutes § 54-251 (a),[13] "prior to accepting the defendant's [guilty] plea, the court [is] required to both inform him that an entry of a finding of guilty after accepting his plea would subject him to the sex offender registry requirements and determine that he fully understood those consequences of his plea." Id., 766. In the present case, there is no such statutory requirement, as the defendant was not attempting to plead guilty. Rather, he was being canvassed with respect to his decision to represent himself.

Finally, we address the argument that the court failed in its canvass to elicit whether he possessed "the intelligence and capacity" to appreciate the consequences of self-representation. The defendant asserts that the court had an obligation to determine whether he was "familiar with Connecticut's procedural and evidentiary rules." The defendant also suggests that the court was required to ask him if he "had any mental health issues or ask his counsel whether they perceived the defendant to have mental health issues."

The defendant does not draw our attention to any legal requirement for these specific inquiries to have been made as part of the court's canvass, and we are not aware of any such requirement in our jurisprudence. We are persuaded that the court aptly inquired as to whether the defendant understood the types of responsibilities and dangers that flowed from his desire to

represent himself, and that the defendant's responses to the court's inquiries reflected that he possessed the intelligence and capacity to appreciate the consequences of self-representation. The court inquired about the defendant's educational background, to which the defendant replied that he had obtained a "G.E.D. equivalency of a high school diploma." Also, the court asked the defendant if he had a prior of history representing himself, to which the defendant replied that he did not but that he nonetheless was willing to represent himself. The court inquired if the defendant was aware of the fact that self-representation would require him to select a jury, to comply with the rules of evidence, to follow proper procedures, to file "proper motions," and to conduct research. The defendant's responses to these inquiries did not suggest confusion or uncertainty but that he understood these obligations.

As we explained in part I A of this opinion, the record is devoid of any facts that should have given rise to any specific concerns in the court's mind about the defendant's capacity to waive his right to counsel and to represent himself. The defendant now asserts, without any reference to authority, that he had a "low education level" and, combined with his lack of a history of self-representation, his responses "showed [that] he did not possess the intelligence and capacity to appreciate the consequences of the decision to represent himself." Our review of the entire canvass reflects that it provided the court with sufficient information to determine whether the defendant knowingly, voluntarily, and intelligently waived his right to counsel, and we are not persuaded that any further inquiries were required.

We likewise reject the defendant's suggestion that his education level and lack of experience as a self-represented litigant necessarily meant his election to represent himself was not intelligently made. His responses to the court's inquiries expressed his general understanding of the duties and risks that flowed from his election, and a willingness to perform all of the tasks required of him at trial. To accept the defendant's present argument would tend to undermine the weighty principle that "a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation . . . ." *Faretta* v. *California*, supra, 422 U.S. 835. Moreover, the type of inquiry into the defendant's technical knowledge of law and practice on which the defendant relies is unwarranted, for a defendant's "technical legal knowledge . . . [is] not relevant to an assessment of his knowing exercise of the right to defend himself." Id., 836.

Practice Book § 44-3 is designed to help courts determine "[w]hether a criminal defendant is minimally competent to make the decision to waive counsel, and . . . whether the defendant actually made that decision in

a knowing, voluntary and intelligent fashion." (Internal quotation marks omitted.) *State* v. *Braswell*, supra, 318 Conn. 829. After reviewing the transcript of the court's canvass concerning self-representation, we conclude that the court did not abuse its discretion in allowing the defendant to represent himself, or in determining that he made a knowing, voluntary, and intelligent waiver of his right to counsel.

## II

The defendant next claims that the court abused its discretion by failing, sua sponte, to order a competency hearing or to appoint counsel for him after it granted his request to represent himself.[14] We disagree.

The defendant did not raise this issue at trial and seeks review of this unpreserved claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). "Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Kitchens*, 299 Conn. 447, 466–67, 10 A.3d 942 (2011).

The defendant has met the first two *Golding* requirements in that the record is adequate to permit review and that his claim is of constitutional magnitude. We conclude, however, that the defendant's claim does not satisfy the third prong of *Golding* because the constitutional violation alleged by the defendant does not exist and, therefore, he was not deprived of a fair trial.[15]

"At the outset, we set forth the relevant standard of review and legal principles that guide our resolution of the issue. We review the court's determination of competency under an abuse of discretion standard. . . . In determining whether the trial court [has] abused its discretion, this court must make every reasonable presumption in favor of [the correctness of] its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did. . . .

"The conviction of an accused person who is not

legally competent to stand trial violates the due process of law guaranteed by the state and federal constitutions. . . . This rule imposes a constitutional obligation, [on the trial court], to undertake an independent judicial inquiry, in appropriate circumstances, into a defendant's competency to stand trial . . . . [Section] 54-56d (a) codified this constitutional mandate, providing in relevant part: 'A defendant shall not be tried, convicted or sentenced while the defendant is not competent. . . . [A] defendant is not competent if the defendant is unable to understand the proceedings against him or her or to assist in his or her own defense.'

"This statutory definition mirrors the federal competency standard enunciated in *Dusky* v. *United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960) (per curiam). According to *Dusky*, the test for competency must be whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him. . . . Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial. . . . Thus, in appropriate circumstances, a trial court must, sua sponte, make a further inquiry into a defendant's competence to ensure that he is competent to plead guilty. . . . A court is required to conduct such an inquiry whenever [the court becomes aware of] substantial evidence of mental impairment. . . . Substantial evidence is a term of art. Evidence encompasses all information properly before the court, whether it is in the form of testimony or exhibits formally admitted or it is in the form of medical reports or other kinds of reports that have been filed with the court. Evidence is substantial if it raises a reasonable doubt about the defendant's competency . . . .

"Nonetheless, § 54-56d (b) presumes that a defendant is competent, and [t]he standard governing the determination of competency to stand trial is a relatively low one and . . . mental illness or reduced mental capacity does not alone provide a basis for concluding that a defendant is not competent to stand trial. . . . An accused may be suffering from a mental illness and nonetheless be able to understand the charges against him and to assist in his own defense . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Paulino*, 127 Conn. App. 51, 61–63, 12 A.3d 628 (2011).

In the present case, the defendant claims that his conduct after the court's February 2, 2018 canvass constituted substantial evidence of mental impairment. Thus, he argues, the trial court had a duty "to either order a competency evaluation or appoint counsel for [him]."

In *State* v. *Paulino*, supra, 127 Conn. App. 51, a criminal defendant waived his right to counsel and claimed on appeal that the trial court should have, sua sponte, during the trial, ordered a competency evaluation. Id., 52, 56. The defendant pointed to behavior on his part, during the trial proceedings, that he argued constituted substantial evidence of mental impairment. Id., 65. For example, "he responded 'God told me so,' when asked by the court why he was electing a court trial rather than a jury trial," and "expressed a desire to 'contact the whole world' about his case . . . ." Id. In disposing of the defendant's claim, this court noted that it was "unaware . . . of evidence that was before the court that would have indicated that the defendant suffered from *any* known or apparent mental disease or defect, much less one that would have impacted his ability to understand the charges against him and assist in his defense." (Emphasis in original.) Id., 63–64. Additionally, this court stated that "the trial judge is in a particularly advantageous position to observe a defendant's conduct during a trial and has a unique opportunity to assess a defendant's competency. A trial court's opinion, therefore, of the competency of a defendant is highly significant. . . . As such, the trial court was entitled to rely on its own observations of the defendant's responses during the canvassing, in light of his demeanor, tone, attitude and other expressive characteristics. . . . The trial court was in the best position to assess whether the defendant behaved rationally at that time." (Citation omitted; internal quotation marks omitted.) Id., 64–65. The trial court "offered no indication that it thought that the defendant was incompetent to stand trial." Id., 64.

As in *Paulino*, the defendant in the present case points to several instances after the trial court's February 2, 2018 canvass in which he contends that his conduct showed "substantial evidence of [his] mental impairment and established that he would not be able to assist in his own defense." Additionally, the defendant argues that his conduct during the criminal trial gave rise to a duty on the part of the court to order a competency evaluation or to appoint counsel for him. He argues that he filed "nonsensical, incoherent motions, contesting the trial court's jurisdiction over him and relying on the articles of the [Uniform Commercial Code],"[16] "referred to himself in the third person, filed special limited appearances on his behalf,[17] was disruptive, frequently interrupted the trial court, and had difficulty staying focused." (Footnote added.) He asserts that, during the trial, he asked few questions on cross-examination, did not object to any of the state's questions during the direct examination of the victim, did not present any evidence in support of his defense, and elected not to testify. Additionally, the defendant argues that his "refusal to cooperate with his attorneys . . . showed that he could not conform his behavior and

brings into question his comprehension of the judicial process."

The state, on the other hand, accurately draws our attention to several instances during the trial in which the defendant meaningfully participated in his defense. For example, when the state offered into evidence photographs of the house where the sexual assault took place, the defendant objected on relevance grounds. While cross-examining the victim, he "attempted to challenge the victim's credibility by questioning her regarding the delay in her disclosure to the police and whether she had been intoxicated at the time of the incident."[18] Through his cross-examination of his cousin, Michael Harris, and the defendant's brother, Kaynon Williams,[19] the defendant demonstrated that neither of them had actually witnessed the alleged assault.[20]

The state notes that, after the defendant renewed his motion to dismiss for lack of jurisdiction, he moved for a judgment of acquittal in which he argued that the evidence that the state presented was insufficient to convict him. The defendant stated that "there were plenty of inconsistent statements, phrases, that were used by the alleged witnesses and victim. There's no physical evidence, no DNA, no clothing evidence, no witnesses saw anything." The defendant further contended that the victim could have been "mental[ly] impaired" at the time of the alleged assault because she testified that she was "tipsy" from drinking alcohol and smoking marijuana. Moreover, the state notes that, "[d]uring closing arguments, the defendant argued that there was insufficient evidence to convict him because the state's case was dependent upon the victim's testimony, the victim had been intoxicated, and the rest of the evidence was circumstantial."

We are not convinced that the defendant's behavior after the February 2, 2018 canvass should have prompted the court, sua sponte, to order a competency hearing. At no point after the canvass did the court express concerns about the defendant's competency.[21] Furthermore, the defendant's actions after the state had rested its case demonstrate that he had a basic understanding of the judicial process and a trial strategy for creating reasonable doubt about the veracity of the allegations against him. Even if some of his arguments were not well grounded in the law, and his representation lacked the hallmarks of an attorney skilled in the practice of law, he showed that he had a rational understanding of the proceedings by challenging the sufficiency of the evidence that was before the court. In short, the record reflects that the defendant interacted intelligently with the court, advanced arguments in support of his defense, and actively participated in the trial.

We conclude, therefore, that the court did not abuse its discretion in not ordering, sua sponte, a competency

hearing. Accordingly, the defendant has failed to demonstrate that a constitutional violation exists and that it deprived him of a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual assault, we decline to identify the victim. See General Statutes § 54-86e.

[2] The record reflects that, on July 28, 2017, the defendant was arrested in New York, where he resided, and charged with second degree sexual assault. He then waived procedures incidental to extradition proceedings and was extradited to Connecticut on August 16, 2017.

[3] We presume the defendant meant that his rights under the sixth amendment to the United States constitution were being violated.

[4] In support of this argument, the defendant primarily points to his conduct after the February 2, 2018 canvass that, he asserts, should have alerted the court that he was not competent to waive his right to counsel. Because the court's decision could have been informed only by what was known to it at the time that it ruled on the defendant's request to represent himself, we will consider only the defendant's conduct prior to the court's decision to allow the defendant to represent himself.

[5] "Practice Book § 44-3 provides: 'A defendant shall be permitted to waive the right to counsel and shall be permitted to represent himself or herself at any stage of the proceedings, either prior to or following the appointment of counsel. A waiver will be accepted only after the judicial authority makes a thorough inquiry and is satisfied that the defendant: (1) Has been clearly advised of the right to the assistance of counsel, including the right to the assignment of counsel when so entitled; (2) Possesses the intelligence and capacity to appreciate the consequences of the decision to represent oneself; (3) Comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and (4) Has been made aware of the dangers and disadvantages of self-representation.' " *State* v. *Braswell*, 318 Conn. 815, 828–29 n.4, 123 A.3d 835 (2015).

[6] During the pendency of the direct appeal in *Connor I*, the United States Supreme Court held in *Indiana* v. *Edwards*, supra, 554 U.S. 177–78, that a defendant who is competent to stand trial nevertheless may lack the competency to represent himself. In light of *Edwards*, our Supreme Court in *Connor I* remanded the case to the trial court for additional competency proceedings. *State* v. *Connor*, supra, 292 Conn. 528. During the proceedings on remand, the trial court determined that the defendant was competent to represent himself at his criminal trial, and the defendant appealed, challenging the competency determination. See *State* v. *Connor*, 152 Conn. App. 780, 100 A.3d 877 (2014) (*Connor II*), rev'd, 321 Conn. 350, 138 A.3d 265 (2016). In *Connor II*, this court reversed the trial court's judgment on the ground that the competency hearing was procedurally flawed and directed the trial court to grant the defendant a new criminal trial. Id., 810, 817. The state appealed from this court's decision, and our Supreme Court later concluded that this court erred in reversing the judgment and ordering a new trial because this court had, sua sponte, raised the issue of the procedural adequacy of the remand hearing without giving the parties an adequate opportunity to be heard on this issue. *State* v. *Connor*, 321 Conn. 350, 354, 138 A.3d 265 (2016) (*Connor III*). In *Connor III*, our Supreme Court remanded the case to this court to consider the defendant's claim that "the trial court abused its discretion when it erroneously concluded that the [defendant] was competent to represent himself at [his criminal] trial despite his mental illness or mental incapacity." (Internal quotation marks omitted.) Id., 360; see also *State* v. *Connor*, 170 Conn. App. 615, 620, 155 A.3d 289, cert. granted, 325 Conn. 920, 163 A.3d 619 (2017) (appeal withdrawn January 5, 2018). This court concluded that "the trial court did not abuse its discretion in determining that the defendant had been competent to represent himself at his criminal trial." *State* v. *Connor*, supra, 170 Conn. App. 631.

[7] The defendant requests that this court take judicial notice of the results of a competency evaluation that was conducted in connection with an incident in Virginia, which led to his being arrested there in 2009. This information is not part of the trial court record, as it was not presented to the trial court at any time. Accordingly, we do not consider this evaluation.

[8] This court has recognized that "[t]he trial judge is in a particularly

advantageous position to observe a defendant's conduct during a trial and has a unique opportunity to assess a defendant's competency. A trial court's opinion, therefore, of the competency of a defendant is highly significant. . . . Indeed . . . a trial judge who presides over a defendant's . . . trial will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant." (Citation omitted; internal quotation marks omitted.) *State* v. *Connor*, supra, 170 Conn. App. 629.

[9] In *Connor I*, the defendant's behavior caused the prosecutor to state that, under the circumstances, the court "ha[d] . . . no choice but to order" a competency evaluation. (Internal quotation marks omitted.) *State* v. *Connor*, supra, 292 Conn. 490. For example, at a hearing in which the defendant requested that the court discharge his public defender, he stated that "the left side of [his] brain [was] not working as it should . . . ." (Internal quotation marks omitted.) Id. After the court ordered a competency evaluation, the evaluation team was unable to conduct its assessment of the defendant because he refused to cooperate with the team. Id., 491. Additionally, there were times when he did not speak or otherwise participate in court proceedings. Id., 501.

[10] The defendant also argues that the court, during its canvass, should have asked him or his counsel whether he had any documented or perceived mental health issues. He does not, however, cite authority stating that a court is required to make this inquiry during its canvass, nor are we aware of any such authority. Therefore, we conclude that this aspect of the claim lacks merit.

[11] We note that the court, *Blawie*, *J.*, also advised the defendant: "[T]he danger of self-representation is that you're at a disadvantage. And you would not be able to make the same objections to evidence to preserve the record for purposes of appeal, to understand the strength and weaknesses of the prosecutor's case. Because a competent trained attorney has the skill and training to defend and protect your rights, to assess the issues, and to understand the appropriate way to proceed."

[12] The crime of second degree sexual assault under § 53a-71 (a) (3), as a class C felony, carries with it a maximum sentence of ten years of incarceration, with a mandatory minimum of nine months of incarceration. See General Statutes §§ 53a-35a (7) and 53a-71 (b).

[13] General Statutes § 54-251 (a) provides in relevant part: "Prior to accepting a plea of guilty or nolo contendere from a person with respect to a criminal offense against a victim who is a minor or a nonviolent sexual offense, the court shall (1) inform the person that the entry of a finding of guilty after acceptance of the plea will subject the person to the registration requirements of this section, and (2) determine that the person fully understands the consequences of the plea. . . ."

[14] The defendant does not indicate whether this claim relates to his competence to stand trial, his competence to waive his right to counsel, or his competence to represent himself. In the section of his appellate brief devoted to this claim, the defendant argues that "[t]he record from [his] pretrial hearings showed substantial evidence of [his] mental impairment and established that he would not be able to assist in his own defense." Accordingly, we interpret this claim to be about the defendant's competence to stand trial pursuant to § 54-56d, which provides in relevant part: "For the purposes of this section, a defendant is not competent if the defendant is unable to understand the proceedings against him . . . or *to assist in his or her own defense.*" (Emphasis added.) General Statutes § 54-56d (a).

[15] In his brief to this court, the defendant also argues that the trial court committed plain error by failing to order a competency evaluation. "[T]he plain error doctrine . . . has been codified at Practice Book § 60-5, which provides in relevant part that [t]he court may reverse or modify the decision of the trial court if it determines . . . that the decision is . . . erroneous in law. . . . The plain error doctrine is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . The plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *Houghtaling* v. *Commissioner of Correction*, 203 Conn. App. 246, 281–82, 248 A.3d 4 (2021).

For the reasons set forth in our *Golding* analysis, we do not agree that the defendant has demonstrated that plain error exists.

[16] The defendant filed a motion to dismiss in which he argued that the court did not have jurisdiction over him. The court denied this motion. At trial, after the state had rested, the defendant renewed his previous motion to dismiss, arguing that "[c]riminal codes and statutes do not apply to human beings."

[17] At the beginning of the trial, the defendant stated that he was "making a special appearance on behalf of the defendant, who is right here."

[18] The state presented evidence that the assault occurred at the home of the defendant's cousin, Michael Harris. The victim testified that she fell asleep at about 5:35 a.m. on the morning of May 6, 2017, and that the assault occurred shortly thereafter. Detective David Hudyama of the Norwalk Police Department testified that, on the night of May 8, 2017, the victim, Harris, and Harris' sister went to the police station and reported the assault. Additionally, the state presented evidence that the victim had arrived at Harris' house at approximately 2 a.m. on May 6, 2017, and consumed alcohol throughout the night and smoked marijuana.

[19] Kaynon Williams, the defendant's brother, testified at the trial.

[20] The state presented evidence that the defendant and the victim were alone in Harris' bedroom when the assault occurred. The victim testified that, immediately following the assault, she went downstairs into a room where Harris, Kaynon Williams, and two other individuals were located, and told Harris that she needed to speak with him. She then testified that she and Harris went into the basement of the home, but before she could tell Harris what had occurred, the defendant walked into the basement. Harris testified that he forced the defendant to leave his home. The victim testified that she told Harris about the assault after the defendant left Harris' home.

[21] See footnote 8 of this opinion.